**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:23-CR-036(2) |
| Plaintiff, | : | JUDGE BARRETT |
| v. | : | |
| NEHEMIAH JONES, | : | **UNITED STATES' SENTENCING MEMORANDUM** |
| Defendant. | : | |

## INTRODUCTION

Defendant Nehemiah Jones joined a conspiracy to illegally obtain firearms that were obtained using stolen credit card information. Specifically, Jones joined the leader of the conspiracy in ordering thousands of dollars' worth of firearms online using this stolen financial information. Jones then recruited another coconspirator to pick up the firearms for him in illegal straw purchases that circumvented federal laws designed to prevent firearms from falling into the hands of criminals. Separately, Jones also defrauded the Small Business Administration (SBA) by seeking and obtaining emergency financial assistance for his non-existent business during the COVID-19 pandemic. For this conduct, Jones pled guilty to one count of Making a False Statement During the Purchase of a Firearm in violation of 18 U.S.C. § 922(a)(6) and one count of Making a False Statemen tor Representation to an Agency of the United States, in violation of 18 U.S.C. §§ 1001(a)(2) and 2. The plea agreement left the sentence to be determined by the Court.

In light of the seriousness of these offenses, Jones' additional relevant conduct, and his relative culpability to his other co-defendants, the government believes that an above-Guidelines' sentence of 60 months' imprisonment is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes

of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (internal quotations omitted).

## **BACKGROUND**

In April 2022, Jones joined his brother, Zephaniah, in using stolen credit card information to illegally place orders for firearms with Guns.com, an online firearms dealer. Under federal law, however, the firearms could not be shipped directly to Jones or any other coconspirator; they had to be shipped to a local federal firearms licensee (FFL) retailer, where the transfer could be completed after the buyer filled out an ATF Form 4473 – Firearms Transaction Record. One of the questions on the ATF Form 4473 was: "Are you the actual transferee/buyer of the firearm(s) listed on this form . . . .?" The Form clarified that the person was "not the actual transferee/buyer if [they were] acquiring the firearm(s) on behalf of another person" and that, if they were not the actual transferee/buyer, the FFL could not transfer the firearm to them.

At first, Jones would go to the FFL retailers himself to pick up the firearms. By late May 2022, Jones started to place the online orders in the name of a straw purchaser he recruited, Mykia Melton. After Jones placed these orders, Melton went to the FFL retailers to try to retrieve the firearms. In doing so, she completed the ATF Form 4473s, falsely representing that she was, indeed, the "actual transferee/buyer" of all the firearms, when, in fact, she intended to provide at least some of the firearms to Jones.

Ultimately, the conspiracy as a whole was responsible for approximately 376 attempts to purchase firearms. Although Guns.com's fraud-prevention systems prevented many of the orders from being fulfilled, and although the Cincinnati FFLs identified some of the transactions as illegal "straw purchases" and stopped them, the conspiracy succeeded in having 56 firearms shipped to

FFLs for retrieval and in actually retrieving 37 of those firearms. For his part, Jones was personally responsible for having nine of those firearms shipped to FFLs and in retrieving three of them.

Outside this conspiracy, Jones also defrauded the SBA by seeking and obtaining emergency financial assistance for his non-existent business during the COVID-19 pandemic. Specifically, in April 2021, Jones submitted a fraudulent application to the SBA in order to obtain a Paycheck Protection Program (PPP) loan. In this application, Jones certified to SBA that he owned a business called "massage on air." Knowing that "massage on air" was a non-existent business, Jones further certified to SBA that the business had been in operation on February 15, 2020, and had earned $98,087 in gross income in 2020. Based on this application, Jones received two PPP loans for $20,434, which were later forgiven by the SBA.

## APPLICABLE LAW

The Sentencing Guidelines "should be the starting point and the initial benchmark for choosing a defendant's sentence." *United States v. Demma*, 948 F.3d 722, 727 (6th Cir. 2020) (internal quotations omitted). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Then, "the district court must weigh and apply the range of factors outlined in 18 U.S.C. § 3553(a)." *Id.* at 49-50. These include (1) the nature and circumstances of the offense and the history and characteristics of the defendant and (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a). The Court should impose a sentence sufficient but not greater than necessary to reflect

the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See* 18 U.S.C. § 3553(a).

## ARGUMENT

**A. The government agrees with the Guidelines calculation and statutory requirements set out in the presentence report.**

The government agrees with the Guidelines calculations in the presentence report (PSR) of an offense level of 22 and a criminal history category of I, which results in a Guidelines range of 41-51 months' imprisonment.

The statutory maximum term of imprisonment on Count 4, Making a False Statement During the Purchase of a Firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), is 10 years. The statutory maximum term of imprisonment on Count 20, Making a False Statement or Representation to an Agency of the United States, in violation of 18 U.S.C. §§ 1001(a)(2) and 2, is 5 years. (PSR ¶ 113.)

The statutory maximum term of supervised release is 3 years per count, with multiple terms of supervised release running concurrently. (PSR ¶¶ 117-19.) Since the Guidelines range is in Zone D of the Sentencing Table, Jones is ineligible for probation. (PSR ¶ 124.)

A special assessment of $100 per count is mandatory. (PSR ¶ 126.)

Finally, restitution is mandatory under 18 U.S.C. § 3663(a)(3). As set forth in the PSR, total restitution to the SBA is due in the amount of $40,868, half of which is to be paid in reference to PPP loan 8971318707 and the other half which is to be paid in reference to PPP loan 7502448910. (PSR ¶¶ 131-132.)

**B. The government respectfully submits that a consideration of the § 3553(a) factors shows that a sentence of 60 months is appropriate here.**

*Nature and circumstance of the offense*

4

The nature and circumstances of the offense weigh in favor of a significant prison sentence. To start, Jones used stolen credit card information to enrich himself. This conduct alone is a serious offense in its own right. While the United States ultimately chose not to bring an additional charge for aggravated identity theft under 18 U.S.C. § 1028A, evidence obtained later in the investigation substantiated Jones' personal involvement in knowingly using the credit cards of victims in making purchases amounting to more than a thousand dollars. Had the United States superseded to include a 1028A charge, Jones would have been facing an additional 24-month minimum sentence to be served consecutive to any sentence imposed on his remaining counts. *See* 18 U.S.C. § 1028A(a)(1) and (b).  However, in lieu of superseding, the government and Jones entered into a plea agreement where the government agreed to cap its recommendation for a sentence to 65 months (which accounts for the 24 months above Jones' guideline range). While the government is now seeking a slightly lower sentence than this 65-month cap, it maintains that Jones' use of this stolen credit card information was a serious offense that merits serious punishment.

To make matters worse, Jones used this stolen credit card information to purchase, of all things, deadly weapons.  However, Jones' dishonesty did not end there. Instead, he recruited Melton as a straw purchaser and agreed that she would falsely represent to the FFLs that she was the true purchaser of the firearms when she really intended to provide at least some of the firearms to Jones. In engaging in this conduct, Jones and Melton violated an important federal law designed to ensure that firearms dealers know the true identity of the person buying firearms. Among other things, that law allows dealers to run criminal background checks on the purchasers, which can help prevent criminals from obtaining deadly weapons. It also allows law enforcement to determine who purchased a firearm that is later recovered at the scene of a crime. Jones' circumvention of this law through his straw purchases with Melton, therefore, not only constituted

5

serious offenses, but also demonstrated a disrespect for the law.

Further, Jones joined this conspiracy with eyes wide open. Not only was Jones aware that his brother was using others' names to illegally purchase firearms, but Jones also himself was responsible for facilitating these purchases. Because of Jones' conduct, firearms were illegally obtained and trafficked on to the streets, putting the community in danger.

Finally, Jones' separate conduct of providing false statements to the SBA is also serious. In applying for the PPP loans based on completely fabricated information, Jones took advantage of the emergency aid that was intended to keep business afloat during an unprecedented global pandemic, fraudulently diverting it for his own use.

Taken together, Jones' conduct reflects a pattern of deceitful conduct and disrespect for the law, warranting a significant sentence.

*History and characteristics of the defendant*

As set forth in the PSR, this is Jones' first significant encounter with the criminal justice system. However, this lack of criminal history is an expected and typical characteristic of those convicted of Making a False Statement During the Purchase of a Firearm in violation of 18 U.S.C. § 922(a)(6). If Jones had been a convicted felon, he would not have been able to retrieve these firearms from the FFLs. Nonetheless, Jones' lack of criminal history and support from his family and friends, including his boxing mentor, may suggest a reduced risk of recidivism.

*Promote respect for the law, deterrence, and protect the public*

Jones' conduct impacted the safety of the community. Through his actions, he helped illegally obtain firearms and put the community at risk. Of the three guns that Jones obtained from FFLs, two were subsequently recovered in the hands of felons. The final gun remains unaccounted

6

for. In other words, it is unknown where this firearm is and whose hands it is in. While law enforcement will continue in their efforts to recover this firearm, there is no telling when and where it will be recovered—if they ever will be. And most significantly, there is no way of predicting what damage it will cause in the meantime.

As a result, 60 months' imprisonment is not just appropriate, but necessary to promote respect for the law, deter Jones and others from engaging in similar conduct, and to protect the public from future harm.

*Avoid unwarranted sentence disparities*

Additionally, a sentence of 60 months would also support the need to avoid unwarranted sentence disparities. As the Court is aware, Jones' younger brother, Zephaniah, was the leader of this conspiracy and was sentenced to a total of 79 months of imprisonment.[1] Roderico Allen, the leader of a related identity-theft and gun-trafficking conspiracy in a companion case (1:23-CR-37) was recently sentenced to a total of 60 months' imprisonment.[2] Finally, Mykia Melton, the co-conspirator that Jones himself recruited, received three years of probation. The remaining defendants in both cases are awaiting sentencing.

When comparing Jones' conduct with these other defendants who have been sentenced, it is clear that a substantial sentence is needed to avoid unwarranted sentencing disparities. On the

---

[1] Jones was sentenced to 55 months on Count 1 of the Indictment, which charged him with Conspiracy to Commit a Crime Against the United States in violation of 18 U.S.C. § 371, 24 months on Count 16 of the Indictment, which charged him with Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1), and 55 months on Count of 19 of the Indictment, Making a False Statement or Representation to an Agency of the United States in violation of 18 U.S.C. § 1001(a)(2). Counts 1 and 19 were ordered to run concurrent to each other while Count 16 was ordered to run consecutive to Counts 1 and 19, resulting in a total of 79 months imprisonment. *See* Case No. 1:23-cr-36, Doc. #109, *PageID* #s 545-46.

[2] Allen was sentenced to 36 months on Count 2 of the Indictment, which charged him with Making a False Statement During the Purchase of a Firearm in violation of 18 U.S.C. § 922(a)(6) and to 24 months on Count of 9 of the Indictment, which charged him with Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1). The sentences were ordered to run consecutive to each other for a total of 60 months imprisonment. *See* Doc. #98, *PageID* #s 475-76.

scale of relative culpability, Jones falls on the end closest to the leaders, including his brother, Zephaniah, as well as Allen. Indeed, while Jones may not have been the orchestrating leader of this scheme, he did have considerable knowledge and power in this conspiracy, earning him the enhancement for being a manager or supervisor under U.S.S.G. § 3B1.1(b). Although he was not as successful as Zephaniah in ordering and retrieving the firearms, he was only slightly less successful as Allen, who ordered 13 firearms. Further, Jones took many of the same serious actions of these leaders. Like Zephaniah and Allen, Jones (1) used stolen credit card information to order the firearms; (2) ordered the firearms in the names of others; (3) recruited another to be a straw purchaser for the conspiracy; and (4) agreed with the straw purchaser to make false representations when retrieving the firearms at the FFLs.

In contrast, Jones's conduct is far greater than that of his straw purchaser, Melton, who had limited knowledge of the scope of the conspiracy, was not involved in the ordering of the firearms using stolen credit card information, did not successfully retrieve any firearms, and otherwise had significant mitigating circumstances.

In short, while Jones' involvement was admittedly less than Zephaniah's, it was also greater than the remaining members of his own conspiracy and akin to Allen's role in a similar conspiracy. Given the significant sentences imposed on Zephaniah and Allen and considering Jones' relative culpability, the government believes that a sentence of 60 months' imprisonment would also support the need to avoid unwarranted sentence disparities.

*Restitution*

Finally, an adequate sentence in this case must include restitution. Here, Jones is responsible for restitution in the amount determined by probation to any person, FFL and/or financial institution who suffered financial harm as a result of stolen credit card information, or

8

other stolen financial information, being used to purchase a firearm, ammunition, or firearm accessory during and in relation to the conduct at issue.

Further, Jones' conduct caused the SBA to suffer a loss of $40,868. Accordingly, Jones should be ordered to pay restitution to the SBA in the amount of $40,868 for the PPP loans that he fraudulently obtained and had forgiven.

## **CONCLUSION**

For the reasons given above, the government respectfully requests that the Court sentence Nehemiah Jones to an above-Guidelines sentence of 60 months' imprisonment, three years of supervised release, restitution in the amount determined by probation in relation to the firearms purchased with stolen credit card information, restitution in the amount of $40,868 to the SBA (with the judgment indicating that $20,434 is payment for PPP loan 7502448910 and $20,434 is payment for PPP loan 8971318707), and $200 in special assessments.

Respectfully submitted,

KENNETH L. PARKER
UNITED STATES ATTORNEY

*/s/Danielle E. Margeaux*
DANIELLE E. MARGEAUX (OH 98348)
JULIE D. GARCIA (CA 288624)
Assistant United States Attorneys
United States Attorney's Office
221 E. Fourth St. Suite 400
Cincinnati, OH 45202
513-684-3711
Danielle.Margeaux@usdoj.gov
Julie.Garcia@usdoj.gov